LEE RUBBER & TIRE CORPORATION *v.* CAMFIELD.

5-2362                                    345 S. W. 2d 931

Opinion delivered May 8, 1961.

*Lovell & Evans,* by *James E. Evans,* for appellant.

*Rex W. Perkins* and *Charles Bass Trumbo,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Lee Rubber & Tire Corporation, instituted suit against G. E. Camfield, d/b/a Camfield Tire & Tread Company, in the amount of $2,037.70, representing merchandise purchased from appellant by appellee. The merchandise was camel back rubber, which appellee, a tire dealer of Springdale, used in recapping tires. Appellee answered, and filed a cross-complaint, alleging that the rubber sold to him by appellant company was unfit for the purpose for which it was intended, and that, as a result, Camfield had been damaged in the sum of $48,500. The cause was tried on June 6, 1960, and at the conclusion of all the evidence, both sides moved for directed verdicts. The motions were denied, and the case submitted to the jury, which found for appellant on its complaint in the full amount sought ($2,037.70), but also found for appellee on the cross-complaint in the amount of $3,122.91. The court entered its judgment in these respective amounts for each party, and then found ''that the excess of the set-off, or counterclaim, amounts to $1,085.21, for which judgment is given the defendant on his cross-complaint.'' From the judgment so entered, appellant brings this appeal. There is no cross-appeal. Several points are alleged by appellant for reversal, but a discussion of each contention is deemed unnecessary, since we are of the opinion that the judgment must be reversed because of certain incompetent evidence which the court allowed to go to the jury.

Appellant first asserts that since each of the parties requested a directed verdict, there was, in effect, a waiver of the jury by each party, and the court erred in submitting the issues to the jury. This argument is unsound. The same question was raised in *Holloway* v. *Parker,* 197 Ark. 209, 122 S. W. 2d 563, and in an opinion by Judge Frank Smith, this Court said:

"The practice of withdrawing a case from the jury upon request for a directed verdict was announced in the case of *St. Louis S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71, 139 S. W. 653, Ann. Cas. 1913C, 1339, and was amplified in the case of *Webber* v. *Rodgers,* 128 Ark. 25, 193 S. W. 87, both of which cases have since been frequently cited and followed.

"The effect of these cases is that where both parties have offered their testimony, and each requests the court for a directed verdict and requests no other instruction,[1] the trial court may treat the case as having been withdrawn from the jury and submitted to the court sitting as a jury, and the judgment of the court, pronounced under the circumstances, has the same effect as if the jury itself had decided the case. * * * However, we think that while in cases where both parties have offered all their testimony and each has asked the court for a directed verdict, and neither has asked any other instruction, the trial judge may then withdraw the case from the jury; but he is not required to do so. It is even then within his discretion to submit the case to the jury, rather than to take the case from the jury and decide it himself."

It follows that this contention is without merit. See also *Gill* v. *Burks,* 207 Ark. 329, 180 S. W. 2d 578.

Appellant's case consisted of the testimony of Mrs. Mary D. Goodwin, credit manager at the Memphis branch of Lee Rubber & Tire Corporation, R. W. Anstey, present Memphis branch manager of the company, and R. W. Rinehart, branch manager in New Orleans, Louisiana. Appellee's case consisted solely of the testimony of Camfield. Camfield's alleged damages were based on the contention that he had made numerous adjustments in recap jobs, in order to satisfy customers, and had lost the business of eight good customers because of the unsatisfactory tire recapping, resulting, according to appellee, because of the defective camel back rubber sold

---

[1] In the case before us, an instruction was requested by appellant following the court's denial of the motion for directed verdict.

him by appellant. Camfield testified that the method he used in recapping tires had been checked and approved by the company from whom he purchased the equipment. He stated that Milton Cook, Sr., was branch manager for appellant at the time, and that after trouble developed in the recap jobs, Mr. Cook talked to him about it; that the latter indicated that an adjustment would be made by the home office, and Cook further stated that in his opinion, the tread came off the tires because the camel back was defective. This was likewise the opinion of the witness. This alleged statement by Cook was made with reference to a recapping job for Ted Saum & Company. It is not clear from the record whether Cook examined other recapped tires for which adjustments were made. Appellant objected to Camfield testifying relative to what Cook[2] had said, asserting that it was hearsay evidence, his contention being that the declaration or statement of an employee is not admissible at a subsequent time against an employer. Two cases are cited, both of which involved personal injury suits against an employer, but in those cases, the declarant was an ordinary employee, not clothed with the authority to speak for the principal. It was established by all the testimony that Cook was branch manager at the time referred to by appellee. Dr. Robert A. Leflar, Distinguished Professor of Law, in an article found in 2 Arkansas Law Review, page 43, states:

"Likewise, the admissions of an agent, made within the scope of his authority to speak for his principal, are admissible against the principal, even though they are not declarations against the personal interest of the declarant himself."

Dr. Leflar, in a footnote, then states that "if an agent is not employed to talk, but only do certain acts, then his statements about the acts done are not admissible against his principal." It would appear that the branch manager was possessed of authority to make adjustments on tires,

---

[2] At the time of the trial, Cook was no longer employed by appellant company.

*i. e.,* he was authorized to ''talk'', or contract with customers. In fact, Mr. Anstey testified that he had this authority, and that Cook possessed the same authority. We conclude that this evidence was admissible. See also *Stewart-McGehee Const. Co.* v. *Brewster,* 176 Ark. 430, 3 S. W. 2d 42.

Appellant testified that he had made a large number of adjustments to customers because of defective recapping, and as heretofore mentioned, stated that eight customers of the preceding year had been lost because of the defective jobs. Camfield offered a memorandum of two pages which, according to his testimony, had been prepared in part by him and partly by his wife, under his supervision. This memorandum reflected sixty-seven adjustments given customers by Camfield, and his loss was totaled as $1,047.91. The memorandum then sets out the eight customers allegedly lost, and the estimated volume of business done with each during the preceding year. This sum is totaled at $41,500. Appellant vigorously objected to the introduction of this exhibit.

We think the court erred in two respects in permitting this evidence to go to the jury. Section 28-928, Ark. Stats. (Supplement) provides as follows:

''In any court of record of the State, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.''

It definitely appears from the testimony that this memorandum was not prepared in the regular course of business, but rather, was apparently made in preparation for the lawsuit. While the testimony reflects that it was taken from the records, no reason was offered for not placing in evidence the original records. It is not clear from the transcript whether the original records consisted solely of invoices, or a card file, or a set of books. Counsel for appellant offered to accept the business records, but the court held, that since the exhibit was prepared from the original records, the evidence was admissible. We do not agree. One of the purposes of requiring a party to bring in the business records is to permit an inspection of those records by the opposing side, and a reason for admitting business records is that they are prepared at a time when litigation is not anticipated. Certain exceptions exist, i. e., there are times when memoranda, not prepared during the regular course of business may be offered, but the memorandum here offered cannot be placed in that category. No proper foundation was laid for its introduction. In the first place, appellant apparently had no opportunity to examine the originals,—nor is any reason given for not offering the records themselves. It is not shown that such were lost or destroyed,—voluminous,—or not readily available. We think the original records should have been offered rather than the memorandum, in the absence of further showing.

Likewise, the introduction of the memorandum requires a reversal for yet another reason; viz., the inclusion of the estimate of business lost from the eight customers. Round figures were used, and purportedly represent the amount of business done by Camfield with the companies named during the preceding year. None of these people testified, but Camfield stated:

"I lost these accounts on their say-so, and I found I was not getting any business from them. I would ask them why, and they said . . . Attorney for appel-

lant: Your Honor, that's hearsay, and highly irrelevant. Counsel for appellee: I admit that."

The court rendered no ruling. Immediately thereafter, Camfield was again asked if he had investigated to ascertain why he had lost the accounts. He answered, "Because the tread came off," and then proceeded to list the firms that had ceased doing business with him. This was likewise objected to, as well as the memorandum which bore the list and amounts. The court overruled objections to this testimony and evidence, and we think this was clearly error. In the first place, the information testified about was hearsay, for Camfield's testimony relative to the reason for losing the customers, was based on their alleged statements to him. An equally compelling reason is that the designated amounts were all estimates and *the exact amount of business done by each firm with Camfield during the prior year could have been easily ascertained from his records.* In other words, more specific proof was easily available. Appellee cites our recent case of *Dun & Bradstreet, et al* v. *Robinson,* 233 Ark. 168, 345 S. W. 2d 34, in support of the evidence offered. There, we held that a loss of customers, and credit, as well as a loss of business, are elements of damage, but the testimony in that case was far different from the testimony in the one at Bar. For instance, relative to loss of customers and business in the *Dun & Bradstreet* case, appellee Robinson testified that business with one company the year before he was libeled was $30,860.42. Another witness, who had been doing business with Robinson, testified that he gave Robinson less profitable business because "there was a definite question in our mind as to his operation after we received the reports." It was shown that the people (through *their* testimony) who had quit doing business with Robinson, or who had ceased affording him credit, had received the reports which were the basis of the litigation. Of course, in the case before us, it was competent for Camfield to testify that he had lost certain customers, but his testimony for the reason of the loss was inadmissible since it was hearsay, and his estimate

as to the amount of business lost the prior year was incompetent for the reason that the exact information could have been offered.

Appellant argues that certain instructions given the jury were erroneous, but we do not consider this argument since no objections were made, at the time, to the instructions complained of; of course, our holding that certain evidence was inadmissible, may change some instructions. Other errors are alleged, but we find, either, that such contentions are without merit, or that such errors are not likely to occur in another trial.

Because of error, hereinbefore pointed out, the judgment entered on the cross-complaint is reversed, and that cause remanded.