H. E. GATLIN, FATHER AND NEXT FRIEND OF HARRY E. GATLIN, A MINOR AND H. E. GATLIN, INDIVIDUALLY *v.* COOPER TIRE & RUBBER CO.

5-5898                                              481 S.W. 2d 338

Opinion delivered June 12, 1972
[Rehearing denied July 10, 1972.]

*Dickey, Dickey & Drake,* for appellants.

*Coleman, Gantt, Ramsay & Cox,* for appellee.

FRANK HOLT, Justice. Appellant, Harry E. Gatlin, a minor, was injured when a truck he was driving overturned. It appears that the accident was caused by the failure of a tire on a rear wheel of the truck. It is undisputed that the tire was manufactured by appellee. Appellant, H. E. Gatlin. individually and on behalf of his son, brought this action about two years after the accident to recover for the damages sustained by them. Appellants based their action upon the theories of negligence, strict liability in tort and breach of implied warranty. From an adverse judgment, based upon a jury verdict, appellants bring this appeal.

For reversal, appellants first contend that the court erred in refusing to give appellants' requested instruction on strict liability. In support of this contention, they

argue that under the strict liability in tort theory they met the required burden of proof to entitle them to this instruction by proving that they sustained damages which were proximately caused by a tire defectively manufactured by appellee. Appellants insist that they adduced sufficient "testimony both as to an existence of a defect in manufacture and design, as well as a removal of the possibility that the tire failure resulted from the occurrence of other causes."

In *Higgins* v. *General Motors Corp.*, 250 Ark. 551, 465 S.W. 2d 898 (1971), we said:

"***A plaintiff must still prove a defect in design or manufacture which was a proximate cause of his injury. This imposes upon him the burden of proving that the product was in a defective condition at the time it left the hands of the particular seller. . . In the absence of direct proof that the product is defective because of a manufacturing flaw or inadequate design, plaintiff must negate the other possible causes of failure of the product for which the defendant would not be responsible in order to raise a reasonable inference that the dangerous condition existed while the product was still in the control of the defendant. [citing cases] Otherwise, proof of proximate causation would be reduced to rank speculation [citing cases]; and this clearly is not an objective of strict liability."

Appellants' expert witness attributed the tire blowout to a defect in its construction. According to him, there was a "tunnel" or "hollow" area underneath the tire tread on a portion of the shoulder of the tire which resulted from an inadequate supply of rubber when the tire was in the mold machinery during the manufacturing process. In his opinion, the cause of the tire's failure did not result from rubber quality, temperature, speed, driving, loading, or inflation.

On cross-examination, appellants' expert witness testified that the majority of tires have a tread depth of ten thirty-seconds; this tire's tread measurement as to the middle groove was three thirty-seconds. Further, assuming that there was three thirty-seconds of tread left on this tire and a normal passenger load, he was in no position to

state an opinion about how this tire had probably been used and did not think there was anyone qualified to do so. This is "because the wear of the tire depends on so many variables***such as the quality of the rubber; the temperature of the road; the speed of the travel; the way the man drives,***or just the change in the driving." Loading is, also, a factor involved, as well as the inflation of the tires.

Appellee's expert witness testified: "An examination of the tread surface indicates in this particular kind of designed tire that the tire has been run at overloads and at overinflation. The smearing and wiping of the edge of the shoulder right in this area which is being pushed down toward the sidewall of the tire by the excessive loading on the tread surface. This doesn't happen in using this tire at the normal passenger car loads and normal passenger car use. It shows up only when the tire is loaded excessively and well beyond its design limitation.***Now the reason that the number one ply was parted and let this air out was because the outer plies of the tire had flexed excessively and had broken from flexing successively the fourth ply and the third ply and the second ply until finally there was not the required amount of strength available in that four ply tire. It was practically a one ply tire in the final go round. And then at that time, as time went by, and I mean a few hundred miles probably, maybe a few thousand, but certainly more than fifty, as time went by and the tire was impacted in its normal use and normal impact, nothing terrific, it broke the plies, the cords in each of the plies in turn and finally as the number two ply cords broke number one ply separated between the cord and blew the liner out***."

The subject tire was almost eighty percent worn treadwise. There was a stipulation that the tire was manufactured in November, 1967, before the accident which occurred on April 8, 1968. It appears that the tire and a piece of tread were recovered about two years after the accident from the left rear wheel of the demolished truck which was found in a junkyard. That portion of the tire tread covering the area where the blowout occurred has never been recovered. Appellants' expert witness testified, as abstracted: "As far as this tire failure being caused from other sources I have concluded that it could

not have for the following reasons, it would be impossible to conclude that it was a cut with some sharp instrument, firstly, *because the part of the tire which was blown off has never been found* [emphasis added]. . . ., secondly, I can't see how it could have cut quickly through the tread and not cut the fabric [the fabric is frayed and not cut], also a cut would not leave or show a separation on the bottom or fourth ply as is shown in this tire. If it had been a cut it also would not have gone just around the tire where the tunnel appeared but would probably gone completely all the way around the tire." The 7.25 x 14 4-ply tire was constructed for passenger car use. It was being used on an Econoline van truck. A 6.95 x 14 8-ply tire is the type recommended for use by this truck manufacturer. In the circumstances, even if we recognize the theory of strict liability in tort, which we have not, we are unable to say that appellants sufficiently negated all the possible causes of the tire failure.

Appellants, also, assert for reversal that the court erred in instructing the jury as follows: "Cooper Tire & Rubber Co. is in no way responsible to the plaintiff for any negligence of his employer, Oak Lawn Farm, Inc., or any other third party which might have caused the accident for which he seeks to recover his damages. If you find that the claimed injuries of the plaintiff were the proximate result of the negligence of Oak Lawn Farms, Inc., or any third party, then you must find for the defendant, Cooper Tire & Rubber Co." Oak Lawn Farms, Inc., was not made a party in this action. In our view, the giving of this instruction as offered was error in view of appellant's objection that it was a binding instruction which did not make clear that the third party's negligence must have been the sole proximate cause before a verdict for defendant was required. It is a well settled rule of law that the negligence of a third party, not a party to the lawsuit, is no defense unless it is the *sole* proximate cause of the asserted damages, and a plaintiff may recover if the negligence of the named defendant was a contributing cause. See *Beevers, Adm'x. v. Miller,* 242 Ark. 541, 414 S.W. 2d 603, (1967). Furthermore, we have said that it is impermissible to substitute an instruction for an applicable AMI. If an applicable AMI is not used, it is a requirement that the trial court state the basis or reasons for refusal; *C.R.I. & P. R.R. Co. v. Hughes,* 250

Ark. 526, 467 S.W. 2d 150 (1971). In *Vangilder v. Faulk,* 244 Ark. 688, 426 S.W. 2d 821 (1968), we said: "It is implicit that the parties request instructions in the language of an applicable AMI, modified if necessary."

Appellants further assert that the "court erred in denying the motion for summary judgment and denying the motion relating to the responses to the request for admission made at the conclusion of appellants' case." The appellants' requests for admission included, *inter alia,* the question, "that the said tire as examined by the defendant was structurally defective?" These requests were served on appellee on October 7, 1970. Appellee's response to their request was not served on appellants until October 21, 1970, or three days after the 11 days due date designated by appellants pursuant to Ark. Stat. Annot. § 28-358 (Repl. 1962). That statute in pertinent part provides:

"***Each of the matters of which an admission is requested shall be deemed, admitted unless, within a period designated in the request, not less than 10 days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections***."

Appellants assert that since the appellee's response was made three days late that their requests for admission must be deemed as admitted facts; and, therefore, they were entitled to have their motion for summary judgment granted. At the time the requests for admission and response were served or completed, the appellants' complaint alleged a cause of action based upon breach of an implied warranty (no notice was alleged) and, alternatively, negligent manufacture of the tire. Several months thereafter, appellants filed various amendments to their complaint alleging, *inter alia,* that the defect in the tire was caused solely by appellee's negligence and workmanship; that the tire was being used in a reasonably forseeable manner; that the tire was placed upon the market in a defective condition with a latent defect; and, finally, that notice of

the defect in the tire was given to appellee. This allegation of notice is necessary, *L. A. Green Seed Co of Ark.* v. *Williams*, 246 Ark. 463, 438 S.W. 2d 717 (1969). In the circumstances, we think the trial court, notwithstanding appellee's three day delay, acted well within its discretion in accepting appellee's response as constituting denials of appellants' requests for admission. See *B. & P., Inc.* v. *Norment*, 241 Ark. 1092, 411 S.W. 2d 506 (1967).

Appellants, also, contend that the court erred in not allowing appellants' witness to testify concerning a conversation he had with appellee's asserted agent. In support of his position, appellants rely on *Lee Rubber & Tire Corp.* v. *Camfield*, 233 Ark. 543, 345 S.W. 2d 931 (1961). We find no merit in this contention. In the case at bar, appellants' witness was asked: "Now, Mr. Phillips, did you ever have a conversation with Mr. Sinclair concerning the quality of tires that Cooper Tire was putting out during the year?" The proof as adduced merely reflected that appellee's asserted agent had said: "there had been a batch of tires made that were defective*** he didn't know why they were defective, but evidently they must have a certain number of them or something that they could go back to the particular day or week and that those group of tires and if they had any more in the store, they would not put any more back on our trucks." There was not a sufficient showing that this witness' conversation as to a batch of defective tires was connected with their particular tire. Thus, this factual situation is distinguishable from that in *Lee Rubber & Tire Corp.* v. *Camfield, supra,* where the issue related to the purchase of an entire lot of allegedly defective rubber.

Reversed and remanded.

Jones, J., dissents, and Byrd, J., concurs.

CONLEY BYRD, Justice, concurring. I concur in the result but I do not want the bar nor the public to believe that I am in favor of legislating on the question of "strict liability." The legislature has enacted the Uniform Commercial Code in which a great deal of consideration was given to "Product Liability." Article 4 of the Constitution of the State of Arkansas provides for three distinct de-

partments of government—*i.e.* legislative, executive and judicial. Section 2 thereof provides:

"No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others. . ."

The oath of office prescribed by Article 19 Sec. 20, and which I took, requires that I support the Constitution of the State of Arkansas. Consequently I cannot support judicial legislation on the subject of "strict liability" and will not do so no matter how many times the court rules to the contrary on the subject.

If the public wants every manufacturer, producer or processor, irrespective of size or volume, to be subject to "strict liability," it should apply to the General Assembly—where all those with opposing views will have an opportunity to be heard.

For the reasons stated, I respectfully concur.