W. M. BASHLIN COMPANY *v.* James SMITH and Janet SMITH and ARKANSAS POWER & LIGHT COMPANY

82-24                           643 S.W.2d 526

Supreme Court of Arkansas
Opinion delivered November 22, 1982
[Rehearing denied January 31, 1983.]

*Wildman, Harrold, Allen, Dixon & McDonnell,* by: *James W. McDonnell, Jr., J. Richard Buchignani* and *Thomas J. Walsh, Jr.;* and *Butler, Hicky & Hicky, Ltd.,* by: *Philip Hicky, II,* for appellant.

*Gary Eubanks & Associates,* by: *Gary L. Eubanks* and *Hugh F. Spinks,* for appellees James Smith and Janet Smith.

*House, Holmes & Jewell, P.A.,* by: *Philip E. Dixon,* for appellee Arkansas Power & Light Company.

*Barber, McCaskill, Amsler, Jones & Hale,* for appellee J. L. Matthews Company.

JOHN I. PURTLE, Justice. James Smith was a serviceman employed by Arkansas Power and Light Company (AP&L) on May 19, 1977. On that day he was working 30 feet off the ground on a pole, wearing a lineman's belt manufactured by W. M. Bashlin Company. The belt broke while Smith was engaged in a hazardous practice commonly known as double D-ringing. He fell to the ground injuring his spine and paralyzing him from the waist down. A St. Francis County jury returned a verdict finding that James Smith and his wife had suffered damages in the amount of $1,000,000. The jury apportioned the negligence at 80% to Bashlin and 20% to Smith. The distributor of the safety belt, J. L.

Matthews Co., Inc., was a defendant along with Bashlin but the jury apportioned 0% responsibility to Matthews. Bashlin cross-complained against AP&L, Smith's employer, and Eddie Wells, Smith's supervisor. Before trial the court granted both AP&L and Wells a summary judgment based upon the exclusive remedy of the Workers' Compensation Act. The verdict was by interrogatories. One interrogatory found Bashlin responsible for 80% of Smith's damages. One interrogatory found the Matthews company was not negligent. Another interrogatory found that Bashlin did not supply the safety belt in "a defective condition which rendered it unreasonably dangerous . . . [which] condition was a proximate cause of the occurrence." Still another interrogatory found that Bashlin was guilty of negligence which was the proximate cause of the occurrence. Finally, an interrogatory found that James Smith assumed the risk of the occurrence. The jury apportioned the responsibility for the occurrence and the resulting injuries and damages at 80% to Bashlin, 20% to Smith and 0% to J. L. Matthews Co. The trial court reserved a ruling on appellant's motion seeking credit against the judgment for $200,000 which AP&L had paid to Smith under the workers' compensation agreement, In view of our ruling this issue is now moot.

Bashlin appeals from the dismissal of AP&L as a third party defendant, the judgment against Bashlin, and the denial of its post-trial motion for credit on its judgment. We uphold the judgment against Bashlin.

The appellant sets forth six arguments for reversal which are as follows: (I) the finding by the jury that Bashlin did not manufacture the belt in a defective condition rendered the judgment against them improper; (II) the finding by the jury that the injured employee assumed the risk bars his recovery of any sums from the appellant; (III) AP&L's negligence constituted an independent intervening cause of the accident which bars recovery; (IV) the trial court erred in refusing to instruct the jury that any amount awarded the plaintiff would not be subject to income tax; (V) the trial court erred in dismissing appellant's third party complaint against AP&L for indemnity; and, (VI) the verdict was excessive.

This is a products liability suit against the manufacturer (Bashlin) and the distributor (Matthews) of a lineman's belt which was manufactured in 1964. Bashlin filed a third party complaint against Smith's employer, AP&L. The facts are not in material dispute. Bashlin manufactured the belt in 1964 and sometime in, or prior to, 1966, AP&L purchased the belt from Matthews and provided it to Smith. The belt was made primarily of leather but included nylon reinforcing on the saddle portion of the belt. There were D-rings on each side of the body belt. A separate safety belt snapped into the D-rings and looped around a light pole or some other object to be climbed. As described above, the weight of the user would be on the back side or saddle of the body belt, between the D-rings, and upon the looped safety belt. In this position, a lineman could climb up a pole using gaffs on his shoes with the belts to prevent him from falling. The portion of the belt between the D-rings, on the front side where the belt is buckled to adjust to the size of the wearer, has a smaller leather strip with holes for the buckle which is commonly called the "tongue."

Double D-ringing was a practice used by the injured employee and by a lot of other people. The practice consists of snapping both ends of the safety belt into a single D-ring on the body belt. Double D-ringing is used for the purpose of providing the lineman with a longer reach. It was recognized that double D-ringing was not generally considered safe and Smith had acknowledged it was not a safe practice although he continued to utilize it. Double D-ringing was not considered safe because it placed the user in a position where his footing was more unstable, sometimes having only one foot against a pole thereby creating a situation where he was more apt to fall. It also increased the force of one's weight against the tongue portion of the body belt.

The employer, AP&L, had warned Smith that double D-ringing was dangerous. However, they recognized that this was no defense to them under the Workers' Compensation Act. Accordingly, they made a settlement with Smith, who is now a paraplegic, for the sum of $200,000. AP&L waived any right of subrogation against the manufacturer and the distributor. The trial court ruled, as a matter of law,

that AP&L and Smith's supervisor were protected from liability by the exclusive remedy of workers' compensation.

Although it will lengthen the opinion, it is necessary to a proper understanding of the pertinent interrogatories that they be set out in full:

INTERROGATORY NO. 1:

Do you find from a preponderance of the evidence that W. M. Bashlin Company was guilty of negligence which was a proximate cause of the occurrence?

ANSWER: Yes or No   *Yes*

INTERROGATORY NO. 2:

Do you find from a preponderance of the evidence that the lineman's body belt involved in the occurrence was supplied by W. M. Bashlin Company in a defective condition which rendered it unreasonably dangerous and that the defective condition was a proximate cause of the occurrence?

ANSWER: Yes or No   *No*

INTERROGATORY NO. 3:

Do you find from a preponderance of the evidence that the lineman's body belt involved in the occurrence was sold by J. L. Matthews Company, Inc., in a defective condition which rendered it unreasonably dangerous and that the defective condition was a proximate cause of the occurrence?

ANSWER: Yes or No   *No*

INTERROGATORY NO. 4:

Do you find from a preponderance of the evidence that James Smith was guilty of fault which was a proximate cause of the occurrence?

ANSWER: Yes or No  *No*

INTERROGATORY NO. 5:

Do you find from a preponderance of the evidence that James Smith assumed the risk of the occurrence?

ANSWER: Yes or No  *Yes.*

INTERROGATORY NO. 6:

Using 100% to represent the total responsibility for the occurrence and any injuries or damages resulting from it, apportion the responsibility among the parties whom you find to be responsible:

| | |
|---|---|
| W. M. Bashlin Company | 80% |
| J. L. Matthews Company, Inc. | 0% |
| James Smith | 20% |
| TOTAL | 100% |

INTERROGATORY NO. 7:

State the amount of any damages which you find from a preponderance of the evidence were sustained by James Smith as a result of the occurrence.

ANSWER: $960,000.00

INTERROGATORY NO. 8:

State the amount of any damages which you find from a preponderance of the evidence were sustained by Janet Smith as a result of the occurrence.

ANSWER: $40,000.00

## I.

### THE FINDING BY THE JURY THAT BASHLIN DID NOT MANUFACTURE THE BELT IN A DEFECTIVE CONDITION RENDERED THE JUDGMENT AGAINST THEM IMPROPER.

The first point argued by appellant is that the jury's specific finding that the product (the body belt) was not supplied or sold in a defective condition which proximately caused the accident is a bar to holding the manufacturer liable under a negligence theory. The jury was given instruction No. 18 (AMI 1012) which states that the appellees asserted two grounds for recovery: first, that a defective lineman's body belt was manufactured or sold by W. M. Bashlin Company; and, second, that there was negligence on the part of W. M. Bashlin Company. The court then instructed the jury on the two separate causes of action. The finding by the jury that Bashlin did not supply the lineman's body belt in a defective condition does not preclude the finding that Bashlin was negligent in some other respect. The jury may have found that Bashlin was negligent in failing to warn the plaintiff on the use of the belt, in failing to warn about double D-ringing, or that the manufacturer became aware that the belt tongue should not have been constructed of leather alone and should therefore have recalled the product. While it is mere speculation as to what the jury might have based a finding of negligence on, it is obvious from the interrogatories that they did make a specific finding of liability against the appellee. We have recognized that more than one theory of liability may properly be used in matters involving products liability. AMI 1012 provides first for a finding of a defect in the product and second that there was negligence on the part of the supplier. The plaintiff need not bear the burden of proving both theories of liability, it is enough that he prove either. *Sterner* v. *U. S. Plywood-Champion Paper, Inc.*, 519 F.2d 1352 (8th Cir. 1975). We are aware that the holding in *Lindsay* v. *McDonnell-Douglas Aircraft Corp.*, 460 F.2d 631 (8th Cir. 1972), might seem contrary, however the present case is distinguishable on its facts. The holding in *Lindsay* is to the effect that there can be no manufacturer negligence

relating to product design which did not exist as a defect when the manufacturer parted with possession. The court there recognized that an exception might arise where there exists a subsequent duty to warn or to recall. As previously stated, the jury had sufficient facts from which to find that Bashlin breached this duty. If it be considered that *Sterner* and *Lindsay* hold two opposite theories, we think *Sterner* is correct because it is the later pronouncement on the subject by the same court. We do not hold that a manufacturer must produce a product which will last forever. However, instruction No. 25, which was given to the jury in this case, states: "Anticipated life of a product is the period over which the product may reasonably be expected to be useful to the user as determined by the jury." It is obvious the jury determined that the reasonably expected useful life of this belt was greater than that to which it had been put. Therefore, there was no error in allowing the jury to reach a verdict for appellees Smith using either of two theories presented to them in interrogatories.

## II.

## THE FINDING BY THE JURY THAT THE INJURED EMPLOYEE ASSUMED THE RISK BARS HIS RECOVERY OF ANY SUMS FROM THE APPELLANT.

Appellant contends that a jury finding that Smith assumed the risk of the occurrence would bar Smith's recovery against Bashlin. It must be remembered that the trial court instructed the jury that they must consider each interrogatory as a separate verdict. At first glance it might appear that the interrogatory finding that Bashlin did not supply the belt in a defective condition and the finding in another interrogatory that Smith assumed the risk cannot be reconciled with interrogatory No. 6 which apportioned Bashlin 80% and Smith 20% responsible for the occurrence. The finding of the jury was to the effect that James Smith assumed 20% of the responsibility for the risk of the occurrence. We have previously held that the assumption of risk was a complete bar to a recovery as either a matter of law or fact. *Capps* v. *McCarley & Co.*, 260 Ark. 839, 544 S.W.2d 850 (1976); *McDonald* v. *Hickman*, 252 Ark. 300, 478 S.W.2d

753 (1972). AMI 612 defines assumption of risk as considered by the jury. The comment following AMI 612 [Revised] explains: "Conduct which constitutes assumption of risk is now, like negligence, embraced within the concept of 'fault' and therefore it is to be compared with any fault on the part of those parties from whom recovery is sought." Ark. Stat. Ann. § 27-1764 (Repl. 1979) states:

> In all actions for damages for personal injuries or wrongful death or injury to property in which recovery is predicated upon fault, liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party or parties from whom the claiming party seeks to recover damages.

It is clear that the legislature intended assumption of the risk to be viewed as an element of comparative fault. See Ark. Stat. Ann. § 27-1763. We do not agree with the appellant's argument that *Forrest City Machine Works* v. *Aderhold*, 273 Ark. 33, 616 S.W.2d 720 (1981), or *Larson Machine, Inc.* v. *Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980), hold that assumption of risk is a complete bar. It would be a complete bar if the injured party assumed 50% or more of the risk of the occurrence. It must be considered by the jury as an element of fault.

### III.

### AP&L'S NEGLIGENCE CONSTITUTED AN INDEPENDENT INTERVENING CAUSE OF THE ACCIDENT WHICH BARS RECOVERY.

The matter of intervening causes which bar an action against an original tortfeasor has been considered by this court many times. Appellant urges that we hold in accordance with the argument in the case of *Cowart, Adm'x.* v. *Jones*, 250 Ark. 881, 467 S.W.2d 710 (1971). The facts are somewhat analogous in the present case and the *Cowart* case but there is a distinct difference. In *Cowart* this court upheld the trial court's finding that an independent intervening cause barred the recovery of an employee who was fatally injured while working around a construction crane which

was in a defective condition. The trial court in the *Cowart* case directed a verdict against the plaintiff at the conclusion of the trial. We affirmed the decision and stated that the crane had been obtained by decedent's employer in a dangerous condition in that it did not have the necessary safety devices. The essence of the holding in *Cowart* was that when the employer obtained possession of the crane it was a dangerous instrumentality and the lack of safety devices was noticeable and obvious. When the employer continued to use the instrument with the full knowledge of its dangerous aspect, then that constituted an independent intervening cause. In affirming the trial court's judgment in the *Cowart* case we quoted with approval the language of the trial court:

> The most important and persuasive reason why this court is directing a verdict for the defendant Casey Jones is that there can be no question, I rule as a matter of law that representatives in high capacity in Bechtel Corporation admittedly knew that this crane was received from whatever source without the safety devices. That they used it for a period of time. * * * But in any event, charged with that knowledge, in my opinion the law is clear that there was a very definite intervening cause that we cannot attribute to Casey Jones.

We have attempted to define intervening negligence which bars recovery of the original wrongdoer. In the case of *Gatlin* v. *Cooper Tire & Rubber Co.,* 252 Ark. 839, 481 S.W.2d 338 (1972), we held that negligence of a third party is no defense unless it is the sole proximate cause of the injury and/or damages sustained and a plaintiff may recover from the original defendant if the negligence of such defendant was a contributing factor. Appellant also relies upon our holding in *Larson Machine, Inc.* v. *Wallace,* supra. In *Larson* we upheld the doctrine that an independent intervening cause excludes liability for the earlier negligent acts of another party. In fact, we held that there was an independent intervening cause which shielded the manufacturer from the acts of the dealer who had rented the fertilizer spreader to the injured party. We find a substantial distinction between the facts in *Larson* and those in the present case. In *Larson* the machine left the factory with a

shield to protect the power take-off shaft. The shield was intended to prevent injuries such as the one which subsequently occurred. The dealer who obtained the machine and rented it out did so with the full knowledge that the protecting shield had been removed and the power take-off gears were exposed. This was an obvious defect and dangerous condition which was known by the dealer who rented it out and the obviously negligent action on the part of the dealer was held to be an independent intervening cause. In the recent opinion of *Moody Equipment & Supply Co.* v. *Union National Bank,* 273 Ark. 319, 619 S.W.2d 637 (1981), we dealt with whether the negligence of the original defendant could be considered when the facts conclusively established negligence on the part of the person who obtained the equipment from the original defendant. This was a case where a construction crane was rented in a defective condition. We considered the matter under our strict liability statute, Ark. Stat. Ann. § 85-2-318.2 (Supp. 1979). In *Moody* the trial court set aside a verdict which had released the original seller of the crane from liability. In affirming that action we adhered to the theory that the crane was sold in a defective condition which was reasonably foreseeable in the ordinary course of the intended use of the crane. We stated that the later acts of negligence by third persons became concurrent rather than superseding causes of action. The defects on the crane in the *Moody* case were less obvious than in *Cowart, Adm'x.* v. *Jones,* supra. In any event, in *Moody* the holding was that there was concurring negligence on the part of the seller and the user of the equipment.

The appellant's allegations against AP&L in the third party complaint were primarily AP&L failed to properly instruct in safety rules and failed to inspect the equipment or failed to enforce safety rules. None of these acts, if proven, would constitute the obvious defect type negligence which we held in some cases barred a recovery against the original actor. The most that can be said for the third party complaint against AP&L is that it alleged concurrent causes of action. In any event, the matter was presented to the jury as the court's instruction No. 11 (AMI 503) as follows:

W. M. Bashlin Company and J. L. Matthews Company, Inc. contend and have the burden of proving that following any act or omission on their part, an event intervened which in itself caused any damage completely independent of their conduct. If you so find, then their act or omission was not a proximate cause of any damage.

The foregoing instruction placed the matter of independent intervening cause squarely before the jury. This is all that appellant could expect under the facts of this case. It may be said that the general rule is that the intervening act or omission of a third person is not a superseding cause when the original actor's negligent conduct is a substantial factor in bringing about the injury. If the intervening act is a normal response to the situation created by the original actor's conduct, then there is no intervening cause. When the negligent acts of the parties are concurrent, there is no intervening cause which bars recovery against the original actor. *Larson Machine, Inc.* v. *Wallace,* supra.

IV.

THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY THAT ANY AMOUNT AWARDED THE PLAINTIFF WOULD NOT BE SUBJECT TO INCOME TAX.

The appellant questions the correctness of the court's refusal to give certain instructions which were proffered by the appellant as numbers 35 through 41. None of these are contained in the AMI book. Without discussing each one in detail we state that we agree with the appellees' argument that the proffered instructions were generally covered by the instructions which were given by the court. Proffered instruction No. 38 states:

The mere fact that a person is injured or that a product failed while it is being used is not sufficient to show that the product was defective and unreasonably dangerous. Furthermore, the mere fact that a climbing belt failed is not sufficient, standing alone, to establish that

it was defective or unreasonably dangerous. *Edwards* v. *Sears, Roebuck & Co.,* 512 F.2d 276, 289 (5th Cir. 1975).

The court gave instruction No. 13 (AMI 603) which reads as follows:

> The fact that an injury occurred is not, of itself, evidence of negligence on the part of anyone.

It is apparent that proffered instruction No. 38 was simply an enlargement of AMI 603. We think the trial court was correct in stating the matter was covered by other instructions and rejecting the one presented by appellant. Except for proffered instruction No. 41, the other rejected instructions seemed to fit within the framework of the above-stated reasoning. In any event, appellant did not abstract the instructions given which they thought needed further clarification for the benefit of the jury. It is the duty of the judge to instruct the jury and each party to the proceeding has the right to have the jury instructed upon the law of the case with clarity and in such a manner as to leave no grounds for misrepresentation or mistake. *Beevers, Adm'x.* v. *Miller,* 242 Ark. 541, 414 S.W.2d 603 (1967). It is possible that one or more of the proffered instructions could have been of some assistance to the jury but certainly it has not been shown that the jury was not presented the issues in a clear manner. We have reviewed the instructions, abstracted by appellees, and cannot say that the matters considered in the proffered instructions were not covered by those given by the court. Instruction No. 41 regarding the tax consequences of a monetary judgment is the exception because there was no effort by the plaintiffs' counsel or the court to present an instruction on the taxability of an award. Neither is there an instruction on this matter among the instructions set forth in the AMI Book of Civil Instructions. We have not been referred to any case in Arkansas which upholds the presentation of the instruction here in question. The rejection of this type of instruction would preserve the collateral source rule and prevent the matter of the cost of collection to the claiming party from being considered by the jury. At this time we are comfortable in holding that an instruction to the

effect that a personal injury award is untaxable to the receiving party is not proper.

## V.

## THE TRIAL COURT ERRED IN DISMISSING APPEL-LANT'S THIRD PARTY COMPLAINT AGAINST AP&L FOR INDEMNITY.

This argument deals with the allegation that the court erred in dismissing AP&L as a third party defendant. The third party complaint alleged that AP&L was the principal negligent party and that appellant's activities were of a passive nature. The third party complaint alleged that the relationship between AP&L and Bashlin was such that it was the duty of AP&L to indemnify Bashlin. However, the specific allegations were entirely in the nature of a tort and generally included the same allegations as Smith made against Bashlin. The trial court dismissed AP&L from the suit before the trial commenced. Appellant relies heavily upon the case of *Oaklawn Jockey Club, Inc.* v. *Pickens-Bond Construction Co.*, 251 Ark. 1100, 477 S.W.2d 477 (1972). The forerunner of *Oaklawn*, and a case which must be read alongside it, is *C & L Rural Cooperative Corp.* v. *Kincaid*, 221 Ark. 450, 256 S.W.2d 337 (1953). *C & L* was based upon an expressed indemnity agreement wherein the contractor (employer) agreed to hold the owner harmless in case of damages caused by their negligence. The following language from *C & L* clearly shows the action was not one between joint tortfeasors but rather it was based upon the theory of indemnity:

> The present suit by appellants is based not on tort, but an indemnity contract that C & L had with Delta (contractor), which contract, as indicated, provided: "The Contractor (Delta) shall hold the owner (C & L) harmless from any and all claim for injuries to persons or for damages to property happening by reason of any negligence on the part of the Contractor or any of the Contractor's agents or employees during the control by the Contractor of the Project or any part thereof."

The *C & L* opinion is somewhat confusing because it stated that it relied upon *Baltimore Transit Co. v. State,* 183 Md. 674, 39 A.2d 858 (1944), which interpreted and applied the provisions of Maryland's Workmen's Compensation Law and their Uniform Tortfeasors Act. The *Baltimore Transit* case held that a third party defendant could not bring in the employer for contribution on the liability of the original defendant. The holding was clearly to the effect that the compensation law limited the employer's liability as well as the employee's recovery. The court held that " . . . the employer should not be held liable indirectly in an amount that could not be recovered directly." However, the subject of joint tortfeasors was not before the court. It still does not appear that Arkansas has considered the question of whether an employer might be liable to a manufacturer or supplier upon a joint tortfeasor theory. Therefore, we must examine the authorities in other jurisdictions to determine if such holdings are so persuasive as to cause us to follow them.

The matter of contribution or indemnity from a negligent employer to a third party tortfeasor is a complex one. There has evolved a theory known as the Murray-Dawson Rule. This rule was founded upon the reasoning set forth in *Murray v. United States,* 405 F.2d 1361 (D.C. Cir. 1968), and *Dawson v. Contractors Transport Corp.,* 467 F.2d 727 (D.C. Cir. 1972). The Murray-Dawson Rule clearly modifies the former exclusive remedy of workers' compensation which prevented a third party from receiving contribution or indemnity from a joint tortfeasor employer. This rule allows a credit to the original tortfeasor for the amount that it would have been entitled to receive had the employer been held jointly or severally liable with the third party. At common law there was no contribution among joint tortfeasors. Arkansas has adopted a system which allows apportionment of the damages between multiple tortfeasors. The Uniform Contribution Among Tortfeasors Act, Ark. Stat. Ann. § 34-1001 et seq. (Repl. 1962), defines "joint tortfeasors" to mean two or more persons jointly or severally liable in tort for the same injury to person or property. Contribution is available to a tortfeasor regardless of whether the claim has been reduced to judgment so long as the settlement or judgment with the injured person does not

extinguish the liability of the other joint tortfeasors. Ark. Stat. Ann. § 34-1002. There is no question but that the Workers' Compensation Act is the exclusive remedy between an employer and an employee with certain exceptions which we will not set out and which are not involved in this case. However, the act does not specifically state that the employer is immune from a claim by a third party. This question was not decided in *C & L Rural Cooperative Corp.* v. *Kincaid,* supra, or *Oaklawn Jockey Club, Inc.* v. *Pickens-Bond Construction Co.,* supra.

Another rule or exception between contributing joint tortfeasors is known as the Pennsylvania Rule. This rule allows a third party to recover limited contribution from a concurrently negligent employer up to the amount of workers' compensation benefits paid to the employee or his representative. This rule had its genesis in the case of *Maio* v. *Fahs,* 339 Pa. 180, 14 A.2d 105 (1950). However, we will not discuss this rule or the Murray-Dawson Rule further in view of our holding in the present case. Both are exceptions to the rule which holds workers' compensation liability is exclusive as to all claims against the employer.

The Uniform Contribution Among Tortfeasors Act and the Workers' Compensation Act are both involved in this action. One of them must give because both cannot prevail in the matter before us. Therefore, we hold that it is in the interest of public policy and in keeping with the intent of the General Assembly to give the compensation act priority as an exclusive remedy. In matters involving workers' compensation benefits the employer shall be immune from third party tortfeasors' claims.

## VI.

Appellant argues that the verdict was excessive. We do not agree. The employee has already paid out about $72,000 in medical expenses and approximately $39,000 in home improvements to accommodate his paraplegic condition. In determining whether a jury verdict is excessive the question is whether it shocks the conscience of the court or demonstrates that jurors were motivated by passion or prejudice.

Evidence presented to the jury is given its highest probative force in favor of the verdict. If there is substantial evidence to sustain the verdict, it will not be disturbed. *Moses* v. *Kirtley,* 256 Ark. 721, 510 S.W.2d 281 (1974). There are no two cases which are identical in all respects. Each one must stand upon its own facts. *Clark County Lumber Co.* v. *Collins,* 249 Ark. 465, 459 S.W.2d 800 (1970).

The trial court is affirmed as to the judgment.

Affirmed.