BUTLER MANUFACTURING CO. *v.* Robert M. HUGHES and Patsy HUGHES, his wife

86-243 729 S.W.2d 142

Supreme Court of Arkansas
Opinion delivered May 18, 1987
[Supplemental Opinion on Denial of Rehearing June 29, 1987.]

*Friday, Eldredge & Clark*, by: *James M. Simpson* and *H. Charles Gschwend, Jr.*, for appellant.

*Spencer, Spencer, Depper & Guthrie*, for appellees.

JACK HOLT, JR., Chief Justice. The appellee, Robert M. Hughes, a construction worker, was shocked while using a piece of equipment called a "roof runner" and fell from the roof where he was working, receiving numerous injuries. Hughes and his wife sued the appellant, Butler Manufacturing Co., (Butler) from whom the machine was leased, under both products liability and negligence theories. The jury awarded the Hugheses $919,163.25 in damages. It is from a judgment based on that verdict that Butler brings this appeal. We find no merit to its arguments and affirm the judgment.

The accident occurred on September 21, 1981, while Hughes was working for Hampton & Crain Construction Co. The products liability theory asserted by Hughes was based on the contention that Butler leased the roof runner to Hampton & Crain in a defective condition, in that the restraining device, a rubber grommet, designed to relieve strain on the individual wires inside the machine, was missing when the roof runner was received. The negligence theory was that Butler was negligent in its choice of a quality control system, since their system permitted the roof runner to leave the company in this allegedly defective condition. Butler moved for directed verdicts on both theories which were denied. Butler's motion for a judgment notwithstanding the verdict was also denied.

On appeal, Butler challenges two comments made by the Hugheses' attorney during closing arguments; claims there was no substantial evidence of a product defect or of negligence; and objects to the court's jury instruction as to the measure of damages to be awarded for scars and disfigurement suffered by Hughes and to a jury instruction on concurring proximate cause.

## 1. *CLOSING ARGUMENT.*

The Hugheses offered the testimony of Thomas H. Collard, Jr., a consulting engineer, as an expert witness about quality control engineering. Collard's testimony was limited by the judge to a discussion of quality control in a theoretical vein. The court instructed him not to testify specifically about Butler's quality control system. After this ruling, the following colloquy occurred:

Hugheses' Attorney: Based on your understanding of the quality control system that existed at Butler, based on your

reading Mr. Martin's deposition, do you have an opinion as to the likelihood of a piece of equipment leaving that operation in a defective condition?

Butler's Attorney: Your Honor, excuse me. There's just no way—

Court: I'm going to sustain that objection. I think he's gone about as far as an expert can go with looking at those documents. He's now testifying specifically at Butler and I'll sustain that.

During the Hugheses' closing argument, their attorney made the following comments:

Mr. Collard also tells us, very importantly, that a system of quality control, such as that Butler had, i.e., virtually nonexistent—with such a system it was very likely that a machine might get out of that plant in a defective condition. Okay?

. . . .

The possibility is that they have no quality control procedures at Butler Manufacturing, none of any significance, according to Mr. Collard. I've already gone over Mr. Collard's testimony as to what they should have done, should have had that checklist, should have had some sampling. If they had done that, they possibly would have prevented that device from getting out of Butler Manufacturing in a defective condition, but lacking such quality control, it's very possible, it's likely, according to Mr. Collard, that the machine might have left the factory in a defective condition.

No objection was made to these statements by Butler's attorney during the closing arguments. After closing arguments, in a proceeding out of the hearing of the jury, the court heard Butler's motion for mistrial based on these statements by the Hugheses' attorney. The court denied the motion, stating:

Well, under the circumstances, the motion having been made at recess out of the presence of the jury, the Court considered the motion, felt that it was not prejudicial, that I had instructed them that comments of counsel not

consistent with the evidence should be disregarded and, therefore, overrule the motion for mistrial.

A trial judge has wide discretion to control counsel's argument and to deal with a motion for mistrial, and we do not reverse either decision absent a manifest abuse of that discretion. *Wal-Mart Stores, Inc.* v. *Yarbrough*, 284 Ark. 345, 681 S.W.2d 359 (1984); *Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985). Likewise, it is settled law that for the trial court to have committed reversible error, timely and accurate objection must have been made, so that the trial court was given the opportunity to correct such error. *Gustafson* v. *State*, 267 Ark. 830, 593 S.W.2d 187 (1980). Here, by waiting until after closing arguments when they were out of the presence of the jury to make a motion for mistrial, Butler's attorney did not give the trial court the opportunity to correct any error committed during the closing argument. By this action, they waived the objection.

Butler cites an Eighth Circuit Court of Appeals holding that counsel may make his objection to closing argument at the end of the argument, before the case is submitted to the jury. *Lange* v. *Schultz*, 627 F.2d 122 (8th Cir. 1980). We decline to follow the Eighth Circuit's position and instead require a timely objection, made at the time the alleged error occurs, so that the trial judge may take such action as is necessary to alleviate any prejudicial effect on the jury.

## 2. *SUBSTANTIAL EVIDENCE.*

Butler next contends that the trial court erred by failing to grant its motion for judgment n.o.v. or its motion for a new trial, since no substantial evidence existed from which a jury could properly find that Butler's negligence or a defect in the roof runner proximately caused the injuries or damages to the Hugheses.

When the trial court denies a motion for a new trial, this court determines only if the verdict is supported by substantial evidence. *Ferrell* v. *Whittington*, 271 Ark. 750, 610 S.W.2d 572 (1981). Likewise, the trial court may enter a judgment n.o.v. if there is no substantial evidence to support the verdict. In testing whether there is any substantial evidence, the evidence and all reasonable inferences deducible therefrom should be viewed in

the light most favorable to the party against whom the verdict is sought. If there is any conflict in the evidence, or where the evidence is not in dispute but is in such a state that fair-minded men might draw different conclusions therefrom, it is error to direct a verdict. *Westside Motors* v. *Curtis*, 256 Ark. 237, 506 S.W.2d 563 (1974); *Haseman* v. *Union Bank of Mena et al.*, 268 Ark. 318, 597 S.W.2d 67 (1980).

■■ Where there is a conflict in the evidence, the determination by the jury of the issues is conclusive. The fact that this court would have reached a different conclusion will not warrant the setting aside of a verdict based upon conflicting evidence. *Stamper* v. *Aluminum & Zinc Die Cast Co.*, 283 Ark. 92, 671 S.W.2d 170 (1984). Furthermore, the jury is authorized to believe or disbelieve any testimony and the weight and value to be given to the testimony of expert witnesses is the exclusive province of the jury. *Id.* On appeal, this court will not disturb the jury's conclusion unless we can say there is no reasonable probability in favor of appellee's version, and then only after giving legitimate effect to the presumption in favor of the jury findings. *Love* v. *H.F. Const. Co.*, 261 Ark. 831, 552 S.W.2d 125 (1977).

Looking at the evidence in the light most favorable to the Hugheses, testimony as to the allegedly defective condition of the roof runner was as follows. James Crain, a general contractor and owner of Hampton & Crain, testified that they ordered the roof runner when they were "about ready to put the roof on" the gymnasium they were building. He stated the machine was sent by bus and arrived packed in a molded plastic box with two plastic bands around it. Caldwell Webster, Hampton & Crain's supervisor on the gymnasium project, testified that Butler representatives never told him not to use the roof runner if the restraining device was missing; that the roof runner was stored in a locked tool shed at night; and that Hughes was shocked twice by the machine. After the first time, Webster testified he noticed that the restraining device was missing. Hughes fell after he received the second shock. Webster then had an electrician check the machine and he found a loose wire. Mike Vail, an employee for Hampton & Crain at the time of the accident, testified that when he was picked up to go to the job site, he saw the roof runner box in the truck and noticed it was still banded the way it was the previous Friday in the shop. He said he noticed when Hughes was

shocked the first time that the cord on the machine was wrapped with black electrician's tape and that the bracket that holds the cord in place was missing. He also testified the wires were loose without the restraining device. Hughes testified he was present when the roof runner was uncrated and at that time he noticed the rubber grommet was missing that holds the cord coming out of the machine in place.

As to the cause of the accident, the Hugheses offered the testimony of Robert Newell, an electrical engineer, that if a restraining device is missing on a piece of equipment which is metal-enclosed, an unreasonably dangerous situation exists. Newell stated that in his opinion, the most likely cause of the accident was that the black or hot wire in the roof runner broke and contacted the metal housing of the roof runner and shocked Hughes. Newell said the hot wire apparently broke because the restraining device was missing. Collard further testified that Butler's quality control system was "a little lax."

Butler offered testimony that the circuit breaker used was too high and that if a lower amp fuse had been used, the chance of Hughes being shocked would have been greatly reduced. Newell disagreed with this conclusion, however, and said the circuit breaker did not have any direct effect on the shock Hughes received.

Although there were conflicts in testimony, these were properly resolved by the jury. The foregoing testimony offered substantial evidence so as to justify the verdict and the denial of Butler's motion for new trial.

### 3. *JURY INSTRUCTION ON DAMAGES.*

Butler contends that the court erred by instructing the jury as follows:

> If you decide for Robert Hughes and/or Patsy Hughes on the question of liability . . . you must then fix the amount of money which will . . . compensate [them] . . . for any of the following seven elements of damages sustained which you find were proximately caused by the fault of Butler Manufacturing Company,

> . . . .

Sixth, any scars, disfigurement, and visible results of his injuries.

Butler argues there was no showing of any scars, disfigurement or visible results of the injury in the evidence which would allow the jury to be so instructed.

We disagree with Butler's contention and find that there *is* sufficient evidence of disfigurement to justify the instruction. Dr. Harold Chakales, the orthopedic surgeon who treated Hughes, testified that Hughes suffered bilateral wrist fractures, which means the "wrist is actually cracked here and knocked upwards and deformed." Dr. Chakales explained that Hughes had evidence "of healed fractures of his left and right wrist with some collapse of the fractures. And this caused his wrists to be radial deviated and to have some prominence over the distal portion of the wrist." The doctor also testified that after surgery, cosmetically the wrists looked better because the "bump that sticks out of there following this type of collapse" was gone.

The doctor's explanation that Hughes's wrists were "deformed" is sufficient proof of disfigurement and visible results of the injury. Although the wrists were evidently improved cosmetically by the surgery, the doctor did not testify that their appearance was now normal.

Butler argues that in *Welter* v. *Curry*, 260 Ark. 287, 539 S.W.2d 264 (1976), this court found scars were not compensable where the testimony did not indicate the scars were disfiguring, discomforting, humiliating, disabling, or normally visible. Butler argues this is the standard by which to judge Hughes's injuries. In *Welter*, however, the plaintiffs alleged in their complaint that disfiguring scars had been suffered that would cause that plaintiff humiliation and embarrassment. There was no similar allegation in this complaint and accordingly Hughes did not have to prove his injuries were humiliating. The instruction did require the jury to find disfigurement and visible results of the injury. No error was committed.

### 4. *JURY INSTRUCTION ON CONCURRING PROXIMATE CAUSE.*

Finally, Butler contends it was error to instruct the jury on concurring proximate cause, AMI Civil 501, in conjunction with

instructing them on AMI Civil 503, because it had a tendency to confuse the jurors on the question of whether Hampton & Crain's negligence could bar the Hugheses' recovery.

AMI 502, as read to the jury, stated:

> When the negligent acts or omissions of two or more persons work together as proximate causes of damage to another, each of those persons may be found to be liable. This is true regardless of the relative degree of fault between them. If you find that negligence of the defendant proximately caused damage to the plaintiff, it is not a defense that some other person may also have been to blame.

AMI 503 read:

> If, following any act or omission of a party, an event intervened which in itself caused any damage, completely independent of the conduct of that party, then his act or omission was not a proximate cause of the damage.

These two instructions state the applicable rules of law. This court has explained that negligence of a third party is no defense unless it is the *sole* proximate cause of the injury, and a plaintiff may recover from the original defendant if that defendant's negligence was a contributing factor to the injury. *W.M. Bashlin Co.* v. *Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982); *Gatlin* v. *Cooper Tire & Rubber Co.*, 252 Ark. 839, 481 S.W.2d 338 (1972). Under these instructions, the jury could have found Butler *and* Hampton & Crain negligent, and still returned a verdict for the Hugheses against Butler; they could have found only Butler to be negligent; or they could have found Butler not negligent. AMI 502 states that it is not a defense that some other person may "also" have been to blame. The word "also" indicates that it is no defense for Butler that Hampton & Crain may have been negligent if Butler too was negligent. If the jury felt that Hampton & Crain was *solely* to blame, AMI 502 did not instruct them to find against Butler. Accordingly, the instructions did not have a tendency to confuse the jurors and there is no merit to Butler's contention.

Affirmed.

Supplemental Opinion on Denial of Rehearing
June 29, 1987

731 S.W.2d 214

1. TRIAL — FAILURE TO MAKE TIMELY OBJECTION TO CLOSING
 ARGUMENT. — By not objecting when the statements were made
 during plaintiff's closing argument and waiting until after plain-
 tiff's closing argument to make a motion for mistrial, appellant
 failed to make a timely objection that would have given the trial
 court the opportunity to correct any error committed during the
 closing argument.
2. APPEAL & ERROR — REPETITION OF ARGUMENT MADE ON APPEAL
 IS AN INAPPROPRIATE SUBJECT FOR PETITION FOR REHEARING. — A
 repetition of an argument made on appeal is an inappropriate
 subject for a petition for rehearing. [Sup. Ct. R. 20(g).]

Petition for Rehearing; denied.

JACK HOLT, JR., Chief Justice. ■ The appellant, Butler
Manufacturing Co., has filed a petition for rehearing based on an
alleged error of law and fact in this court's opinion handed down
May 18, 1987. 292 Ark. 198, 729 S.W.2d 142 (1987). In that
opinion we explained that Butler had waived its objection to
certain statements made during closing argument because they
did not make a timely objection. Specifically, we stated: "No
objection was made to these statements by Butler's attorney
during the closing arguments." Actually, the record reveals that
an objection in the form of a motion for mistrial was apparently
made after the plaintiff's closing argument and before Butler's
argument, in a proceeding out of the presence of the jury. This
proceeding was not part of the record, but the judge referred to its
having taken place elsewhere in the transcript. This error in the
opinion does not affect the outcome of Butler's appeal inasmuch
as, by not objecting when the statements were made during
plaintiff's closing argument, Butler still failed to make a timely
objection that would have given the trial court the opportunity to
correct any error committed during the closing argument.

■ Butler's other argument involves the law governing the
granting of a new trial and is essentially a repetition of his original
argument. It is therefore an inappropriate subject for a petition

for rehearing. Sup. Ct. R. 20(g).

Accordingly, the petition for rehearing is denied.