ELK CORP. OF ARKANSAS *v.* Norman Claude
JACKSON and Eva JACKSON

86-122 725 S.W.2d 829

Supreme Court of Arkansas
Opinion delivered March 16, 1987
[Supplemental Opinion on Denial of Rehearing April 27, 1987.]

*Giffin, Rainwater & Draper*, for appellant.

*Bill R. Holloway, H.L. Merideth, Jr.* and *Robert G. Bridewell*, for appellee.

JACK HOLT, JR., Chief Justice. Norman Claude Jackson suffered extensive paralysis when the tractor-trailer rig he was driving overturned, throwing him out of the cab. He and his wife, appellees, brought suit against Elk Corporation of Arkansas (Elk), appellant, alleging Elk, in manufacturing and packaging bundles of rolled felt roofing, had produced a defective product and had loaded the roofing on his trailer in a negligent manner, causing the accident. The trial court instructed the jury on separate theories of strict liability as to the defective product, and negligence in regard to the loading of the trailer. In answer to special interrogatories, the jury found Elk 90% at fault. After reducing the verdict by the 10% Jackson was found at fault, the jury awards were $1,575,000 for Jackson and $540,000 for his wife for loss of consortium. We hold it was error to instruct the jury on the strict product liability action, as negligence was the only appropriate legal theory of recovery, and reverse.

At the time of the accident, Jackson was a professional truck driver for Builders Transport, Inc., a common carrier. Elk employees loaded 740 rolls of felt roofing, manufactured by Elk, on a flatbed trailer to be hauled by Jackson. Each roll was 40 inches in length, 10 inches in diameter, and weighed 60 pounds. Bundles of 20 rolls of roofing were bound together by a single band, placed in a vertical standing position on wooden pallets, and loaded on the trailer with a forklift. Twenty-three bundles were placed directly on the trailer and fourteen bundles were "double stacked" on top of the first layer of bundles. No safety devices were used by Elk or by Jackson to secure the load.

Several witnesses, including experienced drivers, testified

that bundles of rolled felt roofing, double stacked and with a single metal band around them, comprise a dangerous load absent safety devices, such as sideboards, to prevent shifting of the load. Witnesses agreed that bundles of roofing have a tendency to shift as the bands holding the rolls of roofing together loosen and slide down.

On the day of the accident, Jackson left the Hamburg terminal with a trailer and drove it to Camden, Arkansas where he dropped a load, then proceeded to Elk's plant at Stephens, Arkansas. When he arrived, he contacted his dispatcher for orders relating to pulling the load of roofing which was sitting on a trailer at Elk's dock.

Jackson testified that he tarped and strapped the load and drove approximately 70 miles when he noticed a bulge under the left side of the tarp indicating the load had shifted. As a result, he slowed down and pulled onto the shoulder of the highway. Testimony is in dispute between Jackson, eyewitnesses and experts whether, at that point, the load shifted further, flipping the entire tractor-trailer, or whether the trailer's wheels hit a washed out area of the sloping shoulder, causing the rig to overturn, throwing Jackson out of the cab and causing the injuries which are the subject of this lawsuit.

## I. STRICT LIABILITY

Among the issues raised by Elk on appeal is that the trial court erroneously instructed the jury on strict product liability. We agree that it was error.

The trial court instructed the jury that the Jacksons assert two separate grounds for recovery of damages:

"First, that defective packages of roll roofing material were manufactured, assembled and packaged by Elk Corporation on the trailer to be pulled by Norman Claude Jackson, Jr.'s truck and, second, that there was negligence on the part of Elk Corporation."

In furtherance of the first theory, the jury was apprised of the elements of strict liability for defective products as found in Ark. Stat. Ann. § 85-2-318.2 (Supp. 1985) and *E.I. DuPont De Nemours and Co.* v. *Dillaha,* 280 Ark. 477, 659 S.W.2d 756

(1983). The court instructed:

> With respect to the manufacture, assembly, packaging and loading of a defective product, Norman Claude Jackson, Jr. and Eva Jackson claim damages from Elk Corporation and have the burden of proving each of four essential propositions:
>
> First: That they have sustained damages;
>
> Second: That Elk Corporation was engaged in the business of manufacturing, assembling, packaging and loading roll roofing material on a trailer to be pulled by Norman Claude Jackson, Jr. in this case;
>
> Third: That the packages of roll roofing was supplied by Elk Corporation in a defective condition, which rendered it unreasonably dangerous; and
>
> Fourth: That the defective condition was a proximate cause of Norman Claude Jackson and Eva Jackson's damages.

Definitions of terminology used in strict product liability actions are found in Ark. Stat. Ann. § 34-2802 (Supp. 1985). Products are "any tangible object or goods produced." § 34-2802(b). " 'Defective condition' means a condition of a product that renders it unsafe for reasonably foreseeable use and consumption." § 34-2802(d). Section 34-2802(g) provides that a product is "unreasonably dangerous" if it:

> is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer or user who acquires or uses such product, assuming the ordinary knowledge of the community, or of similar buyers, users or consumers, as to its characteristics, propensities, risks, dangers and proper and improper uses, as well as any special knowledge, training or experience possessed by the particular buyer, user or consumer or which he or she was required to possess. . . .

The jury was also instructed that "fault" means negligence *and* supplying a product in a defective condition. In addition, Jackson was given the benefit of a presumption we have estab-

lished in product liability cases when the court further instructed the jury that "if you find that in the normal course of events no injury would have occurred in the absence of some defect, then you are permitted but not required to infer that a defect existed." *See Petrus Chrysler-Plymouth v. Davis,* 283 Ark. 172, 671 S.W.2d 749 (1984).

In 1973, the Arkansas Legislature adopted strict product liability as a theory of recovery by the passage of § 85-2-318.2. Although we have had several occasions to determine its applicability, none of our cases support Jackson's contentions. We have held that a residential developer cannot be held strictly liable for building a dangerous street because a street is not a product, *Milam v. Midland Corp.,* 282 Ark. 15, 665 S.W.2d 284 (1984); that where the carpet in a house emitted strong fumes of formaldehyde, the house was a product and strict liability applied, *Blagg v. Fred Hunt Co.,* 272 Ark. 185, 612 S.W.2d 321 (1981); that strict liability did not apply when a defective irrigation pump was "merely useless" rather than "something beyond that contemplated by the ordinary and reasonable buyer, taking into account any special knowledge of the buyer concerning the characteristics, propensities, risks, dangers, and proper and improper uses of the product," *Berkely Pump Co. v. Reed-Joseph Land Co.,* 279 Ark. 384, 653 S.W.2d 128 (1983); and that the carton containing soft drinks was part of the product so that the manufacturer could be held strictly liable when a soft drink fell through the carton and injured the plaintiff, *Stalter v. Coca-Cola Bottling Co. of Ark.,* 282 Ark. 443, 669 S.W.2d 460 (1984).

Obviously, Elk's roofing is a "product" as defined by statute. To support a claim of strict product liability, however, Jackson had to show that the packaging of the rolled roofing was supplied by Elk in a defective condition as defined in § 34-2082(d). The record is devoid of evidence in this regard. Jackson's witnesses did not mention any defect in the product, but rather all testified that the way in which the product was loaded made it unreasonably dangerous.

A typical example of the evidence on this issue is the questioning of Karl Franz, an engineer, by Jackson's attorney:

Q You've been asked some questions about hauling roll roofing double stacked, and you used the words "inher-

ently unstable" in your direct testimony. Can you clarify what you mean by "inherently unstable?"

A A roll of tar paper doesn't have a lot of strength in itself.

Q Does that mean it's soft?

A It's a little mushy; it's a little soft. . . . And *if there's a load applied on it*, it'll tend to deform, whereas something that is structurally sound, where the loads that are applied on it, they won't deform.

Q . . .[D]id you say that a load of roll roofing *double stacked, that is, where there's a pallet on top of a pallet of roll roofing* or bundles of roll roofing that it was inherently unstable?

A Yes.

Q I want to ask your opinion, based upon reasonable probability, and further ask you to assume that you have on a forty-four foot trailer similar to that that was referred to as an eighteen-wheeler and you have rolls of roofing twenty per pallet, *and you've got twenty-three pallets on the first deck and fourteen pallets on the second stack*, on the second stack, I want to know your opinion based on reasonable probability as to whether or not that load is unreasonably dangerous?
 . . . .

A I feel like *that configuration of loading with that particular cargo is unsafe.* (emphasis added)

■ In short, it was not a defective, and therefore unreasonably dangerous product which was shown to be the cause of the accident. If Elk was at fault, then it was because Elk negligently loaded Jackson's trailer, not because the rolls of roofing were defective. The mere fact that under certain circumstances an accident may occur in connection with the use of a product does not make the product unreasonably dangerous for purposes of strict liability.

■ When an issue is submitted to the jury that should not have been, if there is no means of ascertaining what feature of the

case controlled the jury in its findings, the error is prejudicial and calls for a reversal. *Black* v. *Bearden*, 167 Ark. 455, 268 S.W. 27 (1925); *Carrigan* v. *Nichols*, 148 Ark. 336, 320 S.W. 9 (1921). Under the circumstances of this case, it is impossible to determine whether the jury determined fault as a matter of negligence, or as a matter of strict liability.

The fact that the jury apportioned fault between Jackson and Elk does not produce any further clues in this regard, for strict liability is not absolute liability in Arkansas. A plaintiff in a strict product liability action can also be at fault. Accordingly, the trial court's definition of fault taken from AMI Civil 2d, No. 306 included "supplying a product in a defective condition" along with negligence and other forms of fault. The jury was also instructed that if Jackson misused the rolled roofing material or used it in a manner not reasonably foreseeable, then he was guilty of fault which was a proximate cause of his own damages. *See* Ark. Stat. Ann. §§ 34-2804 and 2807 (Supp. 1985). The interrogatories to the jury asked only who was at "fault," and did not separate the two theories of recovery. Inasmuch as fault could have been assessed on either theory, we cannot say the instructions were not prejudicial.

The appellee cites two cases which hold that a jury verdict should be affirmed where there was sufficient evidence to support the jury's verdict under any one of several theories. *E.I. DuPont De Nemours and Co., supra*, and *W.M. Bashlin* v. *Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982). In those cases, however, each theory was properly submitted to the jury and the facts could support a verdict under any one or all of them. Such is not the case here.

The trial court committed error in instructing on strict liability in tort.

Because certain other points raised may be at issue on retrial, we will briefly address those issues.

## II. MOTION FOR DIRECTED VERDICT

The trial court did not err in refusing to grant Elk's motion for a directed verdict on the negligence claim. The test upon appeal of the denial of a motion for a directed verdict is "to take that view of the evidence that is most favorable to the party

against whom the verdict is sought and give it its highest probative value, taking into account all reasonable inferences deducible from it, and to grant the motion only if the evidence viewed in that light would be so insubstantial as to require that a jury verdict for the party be set aside." *Cowling & Assoc. v. Clinton Bd. of Educ.*, 273 Ark. 214, 618 S.W.2d 158 (1981).

Elk contends the directed verdict should have been granted because federal statutes and regulations place the sole duty with respect to loading and transporting cargo on the carrier and its driver rather than the shipper; the negligence of Jackson and his employer were an intervening cause of the accident; and there was no evidence of negligence by Elk that was a proximate cause of the accident. Elk cites 49 U.S.C. § 10702 and 49 C.F.R. §§ 392.9, 392.16 and 393.100 for the proposition that the duty of care rested on Jackson and Builder's Transport rather than on Elk. These regulations place certain duties on the carrier to ensure a truck is safely loaded and transported. They do not, however, remove all liability from a shipper for its negligence when it undertakes to load its cargo on a carrier's trailer. Furthermore, any violation of the federal rules would only be evidence of negligence to be considered by the jury along with other evidence in the case. *Franco* v. *Bunyard*, 261 Ark. 144, 547 S.W.2d 164 (1977).

## III. INTERVENING CAUSE

The issues of Jackson's negligence as an intervening cause and the sufficiency of the evidence of Elk's negligence are questions for a jury.

"The question of intervening efficient cause is simply a question whether the original act of negligence or an independent intervening cause is the proximate cause of an injury." *Larson Machine, Inc.* v. *Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980). "Like any other question of proximate causation, the question whether an act or condition is an intervening or concurrent cause is usually a question for the jury. . . . Proximate cause is the efficient and responsible cause, but it need not be the last or nearest one. . . . The mere fact that other causes intervene between the original act of negligence and the injury for which recovery is sought is not sufficient to relieve the original actor of liability, if the injury is the natural and probable consequence of

the original negligent act or omission and is such as might reasonably have been foreseen as probable." *Id.*

As stated earlier, exactly what caused the trailer to overturn was in dispute. Both parties on appeal cite us to testimony in support of their theories as to who was responsible for the cargo, whose negligence was greater in the events leading up to the accident, and what forces acted together to cause the accident. The resolution of these arguments was for the jury, as there was substantial evidence to support a verdict finding Elk negligent and that its negligence was a proximate cause of the accident.

## IV. VIDEOTAPE AS EVIDENCE

Elk also argues the trial court erred in admitting a videotape showing a day in the life of Jackson. Elk does not argues that the tape, which was played with the sound off, was inaccurate or misleading, but that its inflammatory effect outweighed its probative value and that it was cumulative of other evidence. The same guidelines for admission of photographs can be applied to videotapes, where we give the trial court broad discretion in determining admissibility and will not reverse merely because they are inflammatory and cumulative of other evidence, if the probative value outweighs any prejudice, *Berry v. State*, 290 Ark. 223, 718 S.W.2d 447 (1986). *Rodgers v. State*, 261 Ark. 293, 547 S.W.2d 419 (1977). Elk has presented no convincing argument showing the tape was inadmissible.

## V. TESTIMONY AS TO SIMILAR CONDITIONS AND EVENTS

Elk contends that the trial court should have excluded the testimony of two of Jackson's witnesses, Truman Capps and Ernest Bussell. Capps testified as to the loading practices of his employer, Elk Corporation of Alabama, an intersubsidiary corporation of Elk Corporation of Arkansas. Capps stated that Elk of Alabama used certain safety devices when loading rolls of roofing because of previous accidents with that cargo. This testimony was relevant to show that a sister corporation had recognized the danger of hauling double stacked roofing and had taken safety precautions to make the load safe. It also served to rebut the argument by Elk that the carrier and not the shipper was solely responsible for taking safety measures. The testimony was

therefore admissible for these purposes.

Bussell testified that he picked up a load of double stacked roofing which Elk loaded next to Jackson's truck on the same day. He said his load shifted the next day and almost turned over also. Elk argues that the testimony should have been excluded because it was not shown that there was adequate similarity of conditions between the two events to make it reasonable and probable that the same cause produced the same result. *Chicago R.I. & Pac. R.R.* v. *Lynch*, 246 Ark. 1282, 441 S.W.2d 793 (1969). Elk emphasizes that the drivers were on different highways, there was no proof they drove in the same manner, Bussell's load did not shift until the next day, and there were also shingles on Bussell's load. We disagree. That the same type of cargo was loaded in the same way, by the same company, picked up the same day, and experienced similar problems, makes the occurrence similar enough to be relevant on the issue of whether Elk's loading practices were negligent.

## VI. HANDBOOKS AS EVIDENCE

Elk attempted to introduce Builders Transport's Handbook and Directory to impeach Jackson's testimony that he did not know of Builder's safety requirement that its drivers have v-boards, a safety device that helps secure cargo. The trial court did not allow the handbook into evidence for this purpose, although witnesses were allowed to testify later that the handbook contained this requirement. Even though there was no prejudice in this situation, Elk should have been allowed to use the handbook for impeachment purposes when Jackson testified that he was unaware of a requirement concerning v-boards.

Finally, the trial court correctly refused to give an instruction proffered by Elk that would have informed the jury that a jury award is exempt from federal income tax liability. We specifically rejected the use of such an instruction in *W.M. Bashlin, supra.*

Because the trial court erred in instructing on strict liability we reverse and remand.

Reversed and remanded.

Supplemental Opinion on Denial of Rehearing
April 27, 1987

727 S.W.2d 856

JACK HOLT, JR., Chief Justice. Jackson argues in his petition for rehearing that testimony showed that Elk's failure to secure the bundles of twenty rolls of roofing with two metal bands, rather than a single band, caused the bundles to be more likely to come apart and thus made them unreasonably dangerous as "packages." The petition should be denied but clarification of this point is in order. While we agree that there was testimony to support the proposition that the placement of only a single band around the bundles was a contributing cause to the accident, and stated so in the original opinion, we are not persuaded that that action made the roofing a defective product for purposes of strict product liability.

We stated in the original opinion that this case should have been given to the jury solely on the question of whose negligence was the proximate cause of the accident. Jackson contends that Ark. Stat. Ann. § 34-2802(e) (Supp. 1985) and *Stalter* v. *Coca-Cola Bottling Co. of Ark.*, 282 Ark. 443, 669 S.W.2d 460 (1984) support his position that because the rolls of roofing were banded together in an unsafe manner, strict product liability is equally applicable and was properly submitted to the jury. Section 34-2802(e) states:

> "Product liability action" shall include all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing service, warning, instruction, marketing, *packaging* or labeling of any product. (emphasis added)

*Stalter* held that a verdict should not have been directed against the plaintiff on her theories of negligence and strict liability when a Coke bottle fell through the bottom of the carton she was carrying and injured her leg.

Jackson maintains that banding the rolls together for shipment was "packaging" under § 34-2802(e) and that, like the Coke carton in *Stalter*, the bundles were defective packages which were unreasonably dangerous. Jackson correctly points out that a statement in the original opinion can be read to support his argument. There we said that "Jackson had to show that the packaging of the rolled roofing was supplied by Elk in a defective condition as defined in § 34-2802(d)." If a shipper's act of banding together rolls of roofing for loading on a tractor-trailer could be considered "packaging" in the same way that a coca-cola carton is a package for that product, then Jackson would be correct in asserting that this cause of action is covered by § 34-2802(e). As we indicated in the original opinion, perhaps not clearly enough, we consider the rolls of roofing themselves to be the only "product" in this case. The act of banding them together for shipment is simply part of the loading and transporting process for which Elk can only be liable on a negligence theory.

*Stalter* cannot be interpreted to extend strict product liabil-

ity to include the process by which the shipper secures a product for transportation. *Stalter* involved the ultimate consumer of the product carrying the soft drinks in the carton sold with the soft drinks. The carton was obviously intended to be an integral part of the product and its use. In this case, putting a band around Elk's product, the rolls of roofing, was simply to secure the load for shipping. Like the alleged acts of negligence in double stacking the bundles and the failure to secure the load with further safety devices, the process of holding the rolls together with a single metal band while in shipment was part of the alleged *negligence* which the jury should have compared with the alleged contributory negligence of Jackson. In *Stalter* the plaintiff could clearly point to the carton as the defective part of the product. Here, it was the *acts* of negligently securing the rolls, negligently stacking the bundles, and negligently failing to use safety devices that Jackson alleges caused the accident.

Although there was testimony that single banding contributed to the accident, as we noted in the opinion, that testimony was to the effect that the single banding, along with other factors, such as the double stacking, all contributed to making the load dangerous. Jackson should not be allowed to single out one step in that process which can be loosely described as packaging, in order to assert strict liability against Elk without the burden of proving negligence.

Unlike the Restatement (Second) Torts, § 402A (1965) version of strict product liability, our statute, Ark. Stat. Ann. § 85-2-318.2 (Supp. 1985), does not limit strict liability actions to injuries to the ultimate consumer or user. Nevertheless, the product has to meet the definition of unreasonably dangerous found in Ark. Stat. Ann. § 34-2802(g) (Supp. 1985). A product is unreasonably dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer or user who acquires or uses such product. . . ." This definition indicates the emphasis in the product liability act on determining the product and whether it is defective by its consumer use. The product in this case is the roofing itself which was not being used, but rather was being hauled from Elk's dock, and which was not shown to be defective

458-D

or unreasonably dangerous.

Petition denied.