**ELK CORPORATION OF ARKANSAS, Appellant,**

v.

**BUILDERS TRANSPORT, INC., Appellee.**

**No. 88–1850.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1988.

Decided Nov. 23, 1988.

**664**

Richard E. Griffin, Crossett, Ark., for appellant.

Norwood Phillips, El Dorado, Ark., for appellee.

Before FAGG and WOLLMAN, Circuit Judges, and WOODS,* District Judge.

HENRY WOODS, District Judge.

Elk Corporation of Arkansas has appealed from a judgment of the district court granting summary judgment in favor of Builders Transport, Inc. This case involves the exclusivity provision of the Arkansas Workers' Compensation Act, which immunizes the employer from the assertion of "all other rights and remedies of the employee ... or anyone otherwise entitled to recover damages from the employer."[1] Appellant Elk Corporation of Arkansas (hereafter "Elk") was the defendant in a third-party suit filed in the state court by Norman Jackson, an employee of appellee, Builders Transportation, Inc. (hereafter "Builders"). Elk settled that case with the employee, Jackson, and filed the instant suit seeking reimbursement from Builders. Since the clear language of the above statute, as construed by the Arkansas courts, conclusively bars contribution, Elk advances a theory of recovery based on indemnity. The trial judge[2] rejected this basis of recovery and granted summary judgment in favor of Builders. We affirm.

There is no material factual dispute. Norman Jackson was a truck driver for Builders, a common carrier. Elk employees loaded 740 rolls of felt roofing on a flatbed trailer for transport to Hattiesburg, Mississippi. Jackson picked up the loaded trailer at Elk's plant. On the trip he observed that the load was shifting. He pulled off the road onto a shoulder, and the load either shifted further or the tractor-trailer struck a washed-out area on the shoulder. The rig overturned and seriously injured Jackson.[3]

Builders had workers' compensation coverage on Jackson and fully met its obligations under the Arkansas Workers' Compensation Act. Utilizing the third party liability sections of the Act,[4] Jackson sued Elk on a theory of negligence and strict liability in tort.[5] The latter theory was

---

* THE HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. A.C.A. § 11–9–105(a) (1987).

2. The Honorable Oren Harris, United States District Judge for the Eastern and Western Districts of Arkansas.

3. These facts are summarized from the opinion of the Supreme Court of Arkansas in *Elk Corp.* *of Arkansas v. Jackson,* 291 Ark. 448, 725 S.W.2d 829 (1987).

4. A.C.A. § 11–9–410 (1987).

5. Under the Arkansas Comparative Fault Act, both of these theories are a species of fault subject to comparison. A.C.A. § 16–64–122 (1987); Ark. Model Jury Instructions (Civil) No. 306 (1986 Pocket Part).

based upon his contention that the loaded roofing rolls were defective products under the Arkansas statutory scheme of strict liability in tort.[6] The jury found Elk 90% at fault and Jackson 10% at fault.[7]

The judgment in Jackson's favor was reversed by the Supreme Court of Arkansas.[8] While the court agreed that there was sufficient evidence to create a jury question on the negligence claim, it held that submission of the strict liability claim was error since the roofing rolls were not in a "defective condition" as defined by A.C.A. § 16–116–102(4) (1987), and interpreted in several cases.[9] After remand the case was settled for $900,000. It is this sum which Elk now seeks to recover from Builders on a theory of indemnity.

## I. CONTRACTUAL INDEMNITY

■ With minor exceptions, which will be discussed later, indemnity in Arkansas now arises almost entirely by contract. Contractual indemnity is found mostly in construction contracts. The owners of premises often seek specific, written indemnity provisions for which the contractor in turn is given indemnity by the subcontractor; and frequently subcontractors enter into contracts to indemnify each other. These contracts commonly provide that the indemnitee shall be held harmless against his own negligence. Generally such contracts are upheld against the contention that they violate public policy, but the language must be clear, unequivocal and certain. *Pickens–Bond Const. Co. v. North Little Rock Electric Co.*, 249 Ark. 389, 459 S.W.2d 549 (1970), *appeal after remand*, 253 Ark. 172, 485 S.W.2d 197 (1972).

In the case at bar not only is there no such language, but there is not even a contract of indemnity. Appellant seeks to supply this fatal deficiency by urging that somehow the Federal Motor Carrier Safety Regulations appearing in C.F.R. §§ 392.9, 393.00 and 392.16 constitute some type of implied contract of indemnity. The same argument was made without success before the Supreme Court of Arkansas:

> These regulations place certain duties on the carrier to ensure a truck is safely loaded and transported. They do not, however, remove all liability from a shipper for its negligence when it undertakes to load its cargo on a carrier's trailer. Furthermore, any violation of the federal rules would only be evidence of negligence to be considered by the jury along with other evidence in the case. *Franco v. Bunyard*, 261 Ark. 144, 547 S.W.2d 164 [sic] (1977) [261 Ark. 144, 547 S.W.2d 91 (1977)].

*Elk Corp. of Arkansas v. Jackson*, 291 Ark. 448, 456, 725 S.W.2d 829, 833 (1987). Appellant Elk relies on *Oaklawn Jockey Club, Inc. v. Pickens–Bond*, 251 Ark. 1100, 477 S.W.2d 477 (1972) (Harris, C.J. and Fogleman, J. dissenting), a case of extremely doubtful authority, for its contractual indemnity argument. Assuming that this case is still viable, it does not help appellant. In *Oaklawn Jockey Club* there was a contract between the parties. The majority said that an indemnity agreement could be inferred from some of the language of the contract. Even so the court did not create a contract out of thin air as Elk suggests the trial judge should have done in the case at bar.

In any event, subsequent decisions have destroyed the efficacy of the *Oaklawn Jockey Club* decision, which can now only be described as an aberration. In *W.M. Bashlin Co. v. Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982), Arkansas Power & Light Company's (AP & L) lineman fell from a pole and was seriously injured. He blamed the manufacturer of his safety belt, whom the jury charged with 80% of the negligence. The lineman was found 20% negligent. The belt manufacturer sought to implead the employer, AP & L, on an indemnity theory. The Supreme Court of

6. A.C.A. § 4–86–102 (1987).

7. The substantial damages were reduced by the percentage of Jackson's fault. See Appellee's Brief, p. 13.

8. *Elk Corp. of Arkansas v. Jackson, supra*, n. 3.

9. For a review of the cases, *see Elk Corp. of Arkansas v. Jackson*, 291 Ark. 448, 453–54, 725 S.W.2d 829, 931–32 (1987).

Arkansas found that the latter was nothing more than a joint tortfeasor from whom contribution was sought. The court pointed out that since *C & L Rural Cooperative Corp. v. Kincaid*, 221 Ark. 450, 256 S.W.2d 337 (1953), the Arkansas rule has been that an employer cannot be sued for contribution absent an express contract of indemnity. Noting the conflict between *Oaklawn Jockey Club, supra*, and *C & L Rural Cooperative Corp., supra*, the court resolved that conflict in the following paragraph:

> The Uniform Contribution among Tortfeasors Act and the Workers' Compensation Act are both involved in this action. One of them must give because both cannot prevail in the matter before us. Therefore, we hold that it is in the interest of public policy and in keeping with the intent of the General Assembly to give the compensation act priority as an exclusive remedy. In matters involving worker's compensation benefits the employer shall be immune from third party tortfeasors claims.

277 Ark. 406, 423, 643 S.W.2d 526, 534 (1982).

Since there is no contract at all here, much less an express contract of indemnity, the parties are nothing more than joint tortfeasors and the employer is immune from any claim of contribution or indemnity.[10]

## II. INDEMNITY BY OPERATION OF LAW

■ Indemnity by operation of law is rarely encountered in today's litigation. Before the advent of comparative fault, many jurisdictions applied indemnity when one tortfeasor was "actively" negligent and the other was "passively" negligent. This distinction now finds little favor, particularly in the 44 jurisdictions adopting some form of comparative fault. In *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493 (5th Cir.1982) Judge Alvin Rubin incisively

discussed the reasons for the abrogation of the active-passive rule in the face of the proportionate assessment of fault between joint tortfeasors and concluded, "It is difficult to see the need for the active-passive indemnification rule in a comparative fault system." *Id.* at 501. Arkansas was the first state to adopt the optional version of the Uniform Contribution Among Tortfeasors Act,[11] thus early opting for proportionate assessment of fault between joint tortfeasors.

U.S. District Judge Elsijane Roy denied indemnity in a situation strikingly similar to the instant case, where the tortfeasor sought indemnity as a matter of law under the "active-passive" concept. The plaintiff, a railroad employee riding in the caboose, was injured when the train made an emergency stop to avoid striking a stalled tractor-trailer rig. The railroad settled with the employee on his Federal Employers' Liability Act[12] claim and then sued the truck driver and his employer for indemnity. The jury found that the driver of the rig was 5% negligent and the railroad 95% negligent. Judge Roy refused indemnity. The court of appeals affirmed on other grounds and did not reach the active-passive issue, but noted that the views of Judge Roy were entitled to great respect. *Missouri Pac. R.R. v. Star City Gravel Co.*, 592 F.2d 455 (8th Cir.1979), *aff'g* 452 F.Supp. 480 (E.D.Ark.1978). Judge Roy cited *Fidelity & Casualty Co. of N.Y. v. J.A. Jones Const. Co.*, 325 F.2d 605 (8th Cir.1963) which held that architects whose negligence concurred with that of the contractor to cause the death of four employees of the contractor could not resort to indemnity against the contractor, absent a specific contract provision. "Plaintiffs have failed to establish the existence of an express contract of indemnity running in favor of the architects under the circumstances here presented." *Id.* at 607.

There are two other situations where indemnity can arise by operation of law. When a faultless principal is subjected to

---

**10.** Criticism of the *Oaklawn Jockey Club* opinion has been noted elsewhere by the Supreme Court of Arkansas. *See Baldwin Co. v. Ceco Corp.*, 280 Ark. 519, 521–22, 659 S.W.2d 941, 943–44 (1983).

**11.** A.C.A. § 16–61–201, *et seq.* (1987).

**12.** 45 U.S.C. § 51 *et seq.*

liability by reason of the faulty conduct of his agent, the principal may sue his agent for indemnity. *Pacific Nat. Ins. Co. v. Transport Ins. Co.*, 341 F.2d 514 (8th Cir. 1965), *cert. denied*, 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965), *aff'g* 226 F.Supp. 251 (E.D.Ark.1964). "It is settled law in Arkansas that a principal who has been held vicariously liable to a third person for the tortious conduct of its agent has a cause of action against the agent for the damages occasioned by such conduct." *Id.* at 253. In addition, Arkansas permits indemnity against the manufacturer where the supplier of a product is liable in warranty or strict liability for a defect that existed in the product at the time it left the manufacturer's hands. Arkansas has adopted this rule by statute.[13] However, Elk's claim cannot arise by operation of law under either of these theories. Vicarious liability is not present. *Arkansas-Louisiana Gas Co. v. Tuggle*, 201 Ark. 416, 146 S.W.2d 154 (1940); *Bower v. Union Pacific Railroad*, 106 Kan. 404, 188 P. 420 (1920); *Henderson v. Chicago Railways*, 170 Ill.App. 616 (1912). Nor did this case involve a defective product. In fact, the reversal by the Supreme Court of Arkansas was rooted in the erroneous submission on a strict liability theory in addition to a negligence theory. *Elk Corp. of Arkansas v. Jackson*, 291 Ark. 448, 453–54 725 S.W.2d 829, 831–33 (1987).

## III. CONCLUSION

Stripped of the trappings represented by the pleadings, this litigation represents nothing more than a suit by one tortfeasor against another for contribution. That the parties were joint tortfeasors cannot be gainsaid. The litigation prior to the indemnity action proceeded on this basis. The fault of Elk was submitted to the jury along with the fault of Jackson, Builders' employee. The jury found both at fault. The fault of Elk was negligence and (improperly) strict liability in tort. The fault of Jackson was negligence. In other words, the trial in state court proceeded on the basis that the parties were joint tort-

feasors. The jury found that they were joint tortfeasors. After reversal of the jury verdict and subsequent settlement, Elk reached a dilemma. It could not sue for contribution because of the exclusive remedy provision of the Arkansas Workers' Compensation Act. *C & L Rural Elec. Coop. Corp. v. Kincaid*, 221 Ark. 450, 256 S.W.2d 337 (1953). Nor could it prevail on an indemnity theory since such a claim must be based on an express contract providing indemnification. No such contract existed here. Nor was there any basis whatsoever for indemnity by operation of law.

The judgment is affirmed.

13. "A supplier of a defective product who was not the manufacturer shall have a cause of action for indemnity from the manufacturer of a defective product arising from the supplier of a defective product." A.C.A., § 16–116–107 (1987).